# Exhibit 1

H.B. No. 15

```
 1                            AN ACT
 2  relating to informed consent to an abortion.
 3        BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:
 4        SECTION 1.  Section 171.002, Health and Safety Code, is
 5  amended to read as follows:
 6        Sec. 171.002.  DEFINITIONS [DEFINITION].  In this chapter:
 7              (1)  "Abortion" [, "abortion"] means the use of any
 8  means to terminate the pregnancy of a female known by the attending
 9  physician to be pregnant with the intention that the termination of
10  the pregnancy by those means will, with reasonable likelihood,
11  cause the death of the fetus.
12              (2)  "Abortion provider" means a facility where an
13  abortion is performed, including the office of a physician and a
14  facility licensed under Chapter 245.
15              (3)  "Medical emergency" means a life-threatening
16  physical condition aggravated by, caused by, or arising from a
17  pregnancy that, as certified by a physician, places the woman in
18  danger of death or a serious risk of substantial impairment of a
19  major bodily function unless an abortion is performed.
20              (4)  "Sonogram" means the use of ultrasonic waves for
21  diagnostic or therapeutic purposes, specifically to monitor an
22  unborn child.
23        SECTION 2.  Section 171.012, Health and Safety Code, is
24  amended by amending Subsections (a), (b), and (c) and adding
```

H.B. No. 15

1  Subsection (a-1) to read as follows:
2       (a)  Consent [Except in the case of a medical emergency,
3  consent] to an abortion is voluntary and informed only if:
4            (1)  the physician who is to perform the abortion [or
5  the referring physician] informs the pregnant woman on whom the
6  abortion is to be performed of:
7                 (A)  the physician's name [of the physician who
8  will perform the abortion];
9                 (B)  the particular medical risks associated with
10 the particular abortion procedure to be employed, including, when
11 medically accurate:
12                     (i)  the risks of infection and hemorrhage;
13                     (ii)  the potential danger to a subsequent
14 pregnancy and of infertility; and
15                     (iii)  the possibility of increased risk of
16 breast cancer following an induced abortion and the natural
17 protective effect of a completed pregnancy in avoiding breast
18 cancer;
19                 (C)  the probable gestational age of the unborn
20 child at the time the abortion is to be performed; and
21                 (D)  the medical risks associated with carrying
22 the child to term;
23           (2)  the physician who is to perform the abortion or the
24 physician's agent informs the pregnant woman that:
25                 (A)  medical assistance benefits may be available
26 for prenatal care, childbirth, and neonatal care;
27                 (B)  the father is liable for assistance in the

2

H.B. No. 15

1  support of the child without regard to whether the father has
2  offered to pay for the abortion; and
3              (C)  public and private agencies provide
4  pregnancy prevention counseling and medical referrals for
5  obtaining pregnancy prevention medications or devices, including
6  emergency contraception for victims of rape or incest; [and]
7        (3)  the physician who is to perform the abortion or the
8  physician's agent:
9              (A)  provides [(D)] the pregnant woman with [has
10 the right to review] the printed materials described by Section
11 171.014; and
12             (B)  informs the pregnant woman[,] that those
13 materials:
14                   (i)  have been provided by the [Texas]
15 Department of State Health Services;
16                   (ii) [and] are accessible on an Internet
17 website sponsored by the department;
18                   (iii) [, and that the materials] describe
19 the unborn child and list agencies that offer alternatives to
20 abortion; and
21                   (iv)  include a list of agencies that offer
22 sonogram services at no cost to the pregnant woman;
23       (4)  before any sedative or anesthesia is administered
24 to the pregnant woman and at least 24 hours before the abortion or
25 at least two hours before the abortion if the pregnant woman waives
26 this requirement by certifying that she currently lives 100 miles
27 or more from the nearest abortion provider that is a facility

3

H.B. No. 15

1 licensed under Chapter 245 or a facility that performs more than 50
2 abortions in any 12-month period:
3         (A)  the physician who is to perform the abortion
4 or an agent of the physician who is also a sonographer certified by
5 a national registry of medical sonographers performs a sonogram on
6 the pregnant woman on whom the abortion is to be performed;
7         (B)  the physician who is to perform the abortion
8 displays the sonogram images in a quality consistent with current
9 medical practice in a manner that the pregnant woman may view them;
10         (C)  the physician who is to perform the abortion
11 provides, in a manner understandable to a layperson, a verbal
12 explanation of the results of the sonogram images, including a
13 medical description of the dimensions of the embryo or fetus, the
14 presence of cardiac activity, and the presence of external members
15 and internal organs; and
16         (D)  the physician who is to perform the abortion
17 or an agent of the physician who is also a sonographer certified by
18 a national registry of medical sonographers makes audible the heart
19 auscultation for the pregnant woman to hear, if present, in a
20 quality consistent with current medical practice and provides, in a
21 manner understandable to a layperson, a simultaneous verbal
22 explanation of the heart auscultation;
23     (5)  before receiving a sonogram under Subdivision
24 (4)(A) and [(3) the woman certifies in writing] before the abortion
25 is performed and before any sedative or anesthesia is administered,
26 the pregnant woman completes and certifies with her signature an
27 election form that states as follows:

4

H.B. No. 15

1    "ABORTION AND SONOGRAM ELECTION
2         (1)  THE INFORMATION AND PRINTED MATERIALS
3    DESCRIBED BY SECTIONS 171.012(a)(1)-(3), TEXAS HEALTH
4    AND SAFETY CODE, HAVE BEEN PROVIDED AND EXPLAINED TO
5    ME.
6         (2)  I UNDERSTAND THE NATURE AND CONSEQUENCES OF
7    AN ABORTION.
8         (3)  TEXAS LAW REQUIRES THAT I RECEIVE A SONOGRAM
9    PRIOR TO RECEIVING AN ABORTION.
10        (4)  I UNDERSTAND THAT I HAVE THE OPTION TO VIEW
11   THE SONOGRAM IMAGES.
12        (5)  I UNDERSTAND THAT I HAVE THE OPTION TO HEAR
13   THE HEARTBEAT.
14        (6)  I UNDERSTAND THAT I AM REQUIRED BY LAW TO
15   HEAR AN EXPLANATION OF THE SONOGRAM IMAGES UNLESS I
16   CERTIFY IN WRITING TO ONE OF THE FOLLOWING:
17        ___ I AM PREGNANT AS A RESULT OF A SEXUAL ASSAULT,
18   INCEST, OR OTHER VIOLATION OF THE TEXAS PENAL CODE THAT
19   HAS BEEN REPORTED TO LAW ENFORCEMENT AUTHORITIES OR
20   THAT HAS NOT BEEN REPORTED BECAUSE I REASONABLY
21   BELIEVE THAT DOING SO WOULD PUT ME AT RISK OF
22   RETALIATION RESULTING IN SERIOUS BODILY INJURY.
23        ___ I AM A MINOR AND OBTAINING AN ABORTION IN
24   ACCORDANCE WITH JUDICIAL BYPASS PROCEDURES UNDER
25   CHAPTER 33, TEXAS FAMILY CODE.
26        ___ MY FETUS HAS AN IRREVERSIBLE MEDICAL
27   CONDITION OR ABNORMALITY, AS IDENTIFIED BY RELIABLE

5

H.B. No. 15

| | |
|---|---|
| 1 | DIAGNOSTIC PROCEDURES AND DOCUMENTED IN MY MEDICAL |
| 2 | FILE. |
| 3 | (7)  I AM MAKING THIS ELECTION OF MY OWN FREE WILL |
| 4 | AND WITHOUT COERCION. |
| 5 | (8)  FOR A WOMAN WHO LIVES 100 MILES OR MORE FROM |
| 6 | THE NEAREST ABORTION PROVIDER THAT IS A FACILITY |
| 7 | LICENSED UNDER CHAPTER 245 OR A FACILITY THAT PERFORMS |
| 8 | MORE THAN 50 ABORTIONS IN ANY 12-MONTH PERIOD ONLY: |
| 9 | I CERTIFY THAT, BECAUSE I CURRENTLY LIVE 100 |
| 10 | MILES OR MORE FROM THE NEAREST ABORTION PROVIDER THAT |
| 11 | IS A FACILITY LICENSED UNDER CHAPTER 245 OR A FACILITY |
| 12 | THAT PERFORMS MORE THAN 50 ABORTIONS IN ANY 12-MONTH |
| 13 | PERIOD, I WAIVE THE REQUIREMENT TO WAIT 24 HOURS AFTER |
| 14 | THE SONOGRAM IS PERFORMED BEFORE RECEIVING THE |
| 15 | ABORTION PROCEDURE.  MY PLACE OF RESIDENCE |
| 16 | IS:_____. |
| 17 | |
| 18 | _____        _____ |
| 19 | SIGNATURE                   DATE" |
| 20 | [that the information described by Subdivisions (1) and (2) has |
| 21 | been provided to her and that she has been informed of her |
| 22 | opportunity to review the information described by Section |
| 23 | 171.014]; [and] |
| 24 | (6) [(4)] before the abortion is performed, the |
| 25 | physician who is to perform the abortion receives a copy of the |
| 26 | signed, written certification required by Subdivision (5); and |
| 27 | (7)  the pregnant woman is provided the name of each |

6

H.B. No. 15

1  person who provides or explains the information required under this
2  subsection [(3)].
3  (a-1)  During a visit made to a facility to fulfill the
4  requirements of Subsection (a), the facility and any person at the
5  facility may not accept any form of payment, deposit, or exchange or
6  make any financial agreement for an abortion or abortion-related
7  services other than for payment of a service required by Subsection
8  (a).  The amount charged for a service required by Subsection (a)
9  may not exceed the reimbursement rate established for the service
10 by the Health and Human Services Commission for statewide medical
11 reimbursement programs.
12 (b)  The information required to be provided under
13 Subsections (a)(1) and (2) may not be provided by audio or video
14 recording and must be provided at least 24 hours before the abortion
15 is to be performed:
16     (1)  orally and [by telephone or] in person in a private
17 and confidential setting if the pregnant woman currently lives less
18 than 100 miles from the nearest abortion provider that is a facility
19 licensed under Chapter 245 or a facility that performs more than 50
20 abortions in any 12-month period; or [and]
21     (2)  orally by telephone or in person in a private and
22 confidential setting if the pregnant woman certifies that the woman
23 currently lives 100 miles or more from the nearest abortion
24 provider that is a facility licensed under Chapter 245 or a facility
25 that performs more than 50 abortions in any 12-month period [at
26 least 24 hours before the abortion is to be performed].
27 (c)  When providing the information under Subsection (a)(3)

7

H.B. No. 15

1  [(a)(2)(D)], the physician or the physician's agent must provide
2  the pregnant woman with the address of the Internet website on which
3  the printed materials described by Section 171.014 may be viewed as
4  required by Section 171.014(e).
5      SECTION 3.  Subchapter B, Chapter 171, Health and Safety
6  Code, is amended by adding Sections 171.0121, 171.0122, 171.0123,
7  and 171.0124 to read as follows:
8      Sec. 171.0121.  MEDICAL RECORD.  (a)  Before the abortion
9  begins, a copy of the signed, written certification received by the
10 physician under Section 171.012(a)(6) must be placed in the
11 pregnant woman's medical records.
12     (b)  A copy of the signed, written certification required
13 under Sections 171.012(a)(5) and (6) shall be retained by the
14 facility where the abortion is performed until:
15         (1)  the seventh anniversary of the date it is signed;
16 or
17         (2)  if the pregnant woman is a minor, the later of:
18             (A)  the seventh anniversary of the date it is
19 signed; or
20             (B)  the woman's 21st birthday.
21     Sec. 171.0122.  VIEWING PRINTED MATERIALS AND SONOGRAM
22 IMAGE; HEARING HEART AUSCULTATION OR VERBAL EXPLANATION.  (a)  A
23 pregnant woman may choose not to view the printed materials
24 provided under Section 171.012(a)(3) after she has been provided
25 the materials.
26     (b)  A pregnant woman may choose not to view the sonogram
27 images required to be provided to and reviewed with the pregnant

8

H.B. No. 15

1  woman under Section 171.012(a)(4).
2       (c)  A pregnant woman may choose not to hear the heart
3  auscultation required to be provided to and reviewed with the
4  pregnant woman under Section 171.012(a)(4).
5       (d)  A pregnant woman may choose not to receive the verbal
6  explanation of the results of the sonogram images under Section
7  171.012(a)(4)(C) if:
8            (1)  the woman's pregnancy is a result of a sexual
9  assault, incest, or other violation of the Penal Code that has been
10 reported to law enforcement authorities or that has not been
11 reported because she has a reason that she declines to reveal
12 because she reasonably believes that to do so would put her at risk
13 of retaliation resulting in serious bodily injury;
14           (2)  the woman is a minor and obtaining an abortion in
15 accordance with judicial bypass procedures under Chapter 33, Family
16 Code; or
17           (3)  the fetus has an irreversible medical condition or
18 abnormality, as previously identified by reliable diagnostic
19 procedures and documented in the woman's medical file.
20      (e)  The physician and the pregnant woman are not subject to
21 a penalty under this chapter solely because the pregnant woman
22 chooses not to view the printed materials or the sonogram images,
23 hear the heart auscultation, or receive the verbal explanation, if
24 waived as provided by this section.
25      Sec. 171.0123.  PATERNITY AND CHILD SUPPORT INFORMATION.
26 If, after being provided with a sonogram and the information
27 required under this subchapter, the pregnant woman chooses not to

9

H.B. No. 15

1  have an abortion, the physician or an agent of the physician shall
2  provide the pregnant woman with a publication developed by the
3  Title IV-D agency that provides information about paternity
4  establishment and child support, including:
5        (1)  the steps necessary for unmarried parents to
6  establish legal paternity;
7        (2)  the benefits of paternity establishment for
8  children;
9        (3)  the steps necessary to obtain a child support
10 order;
11       (4)  the benefits of establishing a legal parenting
12 order; and
13       (5)  financial and legal responsibilities of
14 parenting.
15       Sec. 171.0124.  EXCEPTION FOR MEDICAL EMERGENCY.  A
16 physician may perform an abortion without obtaining informed
17 consent under this subchapter in a medical emergency.  A physician
18 who performs an abortion in a medical emergency shall:
19       (1)  include in the patient's medical records a
20 statement signed by the physician certifying the nature of the
21 medical emergency; and
22       (2)  not later than the 30th day after the date the
23 abortion is performed, certify to the Department of State Health
24 Services the specific medical condition that constituted the
25 emergency.
26       SECTION 4.  Section 171.013(a), Health and Safety Code, is
27 amended to read as follows:

H.B. No. 15

1 (a) The [If the woman chooses to view the materials
2 described by Section 171.014, the] physician or the physician's
3 agent shall furnish copies of the materials described by Section
4 171.014 to the pregnant woman [her] at least 24 hours before the
5 abortion is to be performed and shall direct the pregnant woman to
6 the Internet website required to be published under Section
7 171.014(e). The [A] physician or the physician's agent may furnish
8 the materials to the pregnant woman by mail if the materials are
9 mailed, restricted delivery to addressee, at least 72 hours before
10 the abortion is to be performed.
11      SECTION 5.  Section 171.015, Health and Safety Code, is
12 amended to read as follows:
13      Sec. 171.015.  INFORMATION RELATING TO PUBLIC AND PRIVATE
14 AGENCIES.  The informational materials must include [either]:
15           (1) geographically indexed materials designed to
16 inform the pregnant woman of public and private agencies and
17 services that:
18                (A) are available to assist a woman through
19 pregnancy, childbirth, and the child's dependency, including:
20                     (i) a comprehensive list of adoption
21 agencies;
22                     (ii) a description of the services the
23 adoption agencies offer; [and]
24                     (iii) a description of the manner,
25 including telephone numbers, in which an adoption agency may be
26 contacted; and
27                     (iv) a comprehensive list of agencies and

H.B. No. 15

1  organizations that offer sonogram services at no cost to the
2  pregnant woman;
3          (B)  do not provide abortions or abortion-related
4  services or make referrals to abortion providers; and
5          (C)  are not affiliated with organizations that
6  provide abortions or abortion-related services or make referrals to
7  abortion providers; and [or]
8      (2)  a toll-free, 24-hour telephone number that may be
9  called to obtain an oral list and description of agencies described
10 by Subdivision (1) that are located near the caller and of the
11 services the agencies offer.
12     SECTION 6.  Subchapter A, Chapter 241, Health and Safety
13 Code, is amended by adding Section 241.007 to read as follows:
14     Sec. 241.007.  COMPLIANCE WITH CERTAIN REQUIREMENTS
15 REGARDING SONOGRAM BEFORE ABORTION.  A hospital shall comply with
16 Subchapter B, Chapter 171.
17     SECTION 7.  Subchapter A, Chapter 243, Health and Safety
18 Code, is amended by adding Section 243.017 to read as follows:
19     Sec. 243.017.  COMPLIANCE WITH CERTAIN REQUIREMENTS
20 REGARDING SONOGRAM BEFORE ABORTION.  An ambulatory surgical center
21 shall comply with Subchapter B, Chapter 171.
22     SECTION 8.  Section 245.006(a), Health and Safety Code, is
23 amended to read as follows:
24     (a)  The department shall [may] inspect an abortion facility
25 at random, unannounced, and reasonable times as necessary to ensure
26 compliance with this chapter and Subchapter B, Chapter 171.
27     SECTION 9.  Chapter 245, Health and Safety Code, is amended

H.B. No. 15

1  by adding Section 245.024 to read as follows:
2       Sec. 245.024.  COMPLIANCE WITH CERTAIN REQUIREMENTS
3  REGARDING SONOGRAM BEFORE ABORTION.  An abortion facility shall
4  comply with Subchapter B, Chapter 171.
5       SECTION 10.  Section 164.055(a), Occupations Code, is
6  amended to read as follows:
7       (a)  The board shall [may] take an appropriate disciplinary
8  action against a physician who violates Section 170.002 or Chapter
9  171, Health and Safety Code.  The board shall [may] refuse to admit
10 to examination or refuse to issue a license or renewal license to a
11 person who violates that section or chapter.
12      SECTION 11.  Subchapter B, Chapter 164, Occupations Code, is
13 amended by adding Section 164.0551 to read as follows:
14      Sec. 164.0551.  COMPLIANCE WITH CERTAIN REQUIREMENTS
15 REGARDING SONOGRAM BEFORE ABORTION.  A physician shall comply with
16 Subchapter B, Chapter 171, Health and Safety Code.
17      SECTION 12.  The purposes of this Act include, but are not
18 limited to:
19           (1)  protecting the physical and psychological health
20 and well-being of pregnant women;
21           (2)  providing pregnant women access to information
22 that would allow her to consider the impact an abortion would have
23 on her unborn child; and
24           (3)  protecting the integrity and ethical standards of
25 the medical profession.
26      SECTION 13.  The change in law made by this Act applies only
27 to an abortion performed on or after the 30th day after the

H.B. No. 15

1  effective date of this Act.  An abortion performed before the 30th
2  day after the effective date of this Act is governed by the law in
3  effect on the date the abortion was performed, and the former law is
4  continued in effect for that purpose.
5      SECTION 14.  The Title IV-D agency shall publish the
6  information required by Section 171.0123, Health and Safety Code,
7  as added by this Act, not later than the 30th day after the
8  effective date of this Act.
9      SECTION 15. Every provision in this Act and every
10 application of the provisions in this Act are severable from each
11 other.  If any application of any provision in this Act to any
12 person or group of persons or circumstances is found by a court to
13 be invalid, the remainder of this Act and the application of the
14 Act's provisions to all other persons and circumstances may not be
15 affected.  All constitutionally valid applications of this Act
16 shall be severed from any applications that a court finds to be
17 invalid, leaving the valid applications in force, because it is the
18 legislature's intent and priority that the valid applications be
19 allowed to stand alone.  Even if a reviewing court finds a provision
20 of this Act invalid in a large or substantial fraction of relevant
21 cases, the remaining valid applications shall be severed and
22 allowed to remain in force.
23     SECTION 16.  This Act takes effect immediately if it
24 receives a vote of two-thirds of all the members elected to each
25 house, as provided by Section 39, Article III, Texas Constitution.
26 If this Act does not receive the vote necessary for immediate
27 effect, this Act takes effect September 1, 2011.

H.B. No. 15

_____        _____
     President of the Senate                Speaker of the House

    I certify that H.B. No. 15 was passed by the House on March 7, 2011, by the following vote:  Yeas 107, Nays 42, 1 present, not voting; and that the House concurred in Senate amendments to H.B. No. 15 on May 5, 2011, by the following vote:  Yeas 94, Nays 41, 1 present, not voting.

                                        _____
                                        Chief Clerk of the House

    I certify that H.B. No. 15 was passed by the Senate, with amendments, on May 3, 2011, by the following vote:  Yeas 21, Nays 10.

                                        _____
                                        Secretary of the Senate

APPROVED:  _____
                Date

_____
      Governor

15