IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| TEXAS MEDICAL PROVIDERS PERFORMING ABORTION SERVICES, et al., | ) ) ) |
| Plaintiffs, | ) ) ) CIVIL ACTION |
| v. | ) ) Case No. 1:11-cv-00486-SS |
| DAVID LAKEY, M.D., et al., | ) ) |
| Defendants. | ) ) |

**APPENDIX OF FACTS SUPPORTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**CONTENTS OF APPENDIX**

- Summary of the facts relied upon to support Plaintiffs' Motion for Preliminary Injunction;

- Exhibit 1: Declaration of David A. Grimes, M.D. ("Grimes Decl.")

- Exhibit 2: Declaration of Anne D. Lyerly, M.D., M.A. ("Lyerly Decl.")

- Exhibit 3: Declaration of Alan Braid, M.D. ("Braid Decl.")

## SUMMARY OF FACTS

### I.   PARTIES

1. Plaintiff Metropolitan Ob-Gyn, P.A., provides medical and surgical abortion services through the licensed abortion facility Reproductive Services of San Antonio ("the Medical Facility") in San Antonio, Texas.  Braid Decl. ¶ 5.

2. Plaintiff Alan Braid, M.D. ("Dr. Braid") is a board-certified obstetrician-gynecologist licensed to practice medicine in Texas.  He is the owner, Medical Director, and Executive Administrator of the Medical Facility, where he provides abortion services.  Braid Decl. ¶¶ 2, 6.

3. The named defendants are government officials with authority to enforce Texas House Bill No. 15 ("the Act"): David Lakey, M.D., Commissioner of the Texas Department of State Health Services, Mari Robinson, Executive Director of the Texas Medical Board, and David Escamilla, County Attorney for Travis County.  Mr. Escamilla is sued in his official capacity and as a representative of a proposed defendant class of prosecutors with authority to enforce the Act.  Compl. ¶¶ 15-17.

### II.   FACTUAL CONTEXT OF ABORTION SERVICES IN TEXAS

4. Legal abortion is a very safe medical procedure; it is one of the safest procedures in contemporary medical practice.  Serious complications from abortion are rare and abortion is significantly safer than pregnancy and childbirth.  Grimes Decl. ¶¶ 4-8; Braid Decl. ¶ 10.

5. Studies have shown that abortion poses little risk of negative psychological consequences for women.  Grimes Decl. ¶ 9.

6. Women seek abortions for a variety of psychological, emotional, medical, familial, economic and personal reasons.  Braid Decl. ¶ 11.

7.     The vast majority of abortions in Texas are performed in the first trimester of pregnancy. More than half of the abortions reported during each of the years from 2001 through 2008 occurred at less than nine weeks gestation, and over three-fourths of the procedures were performed at 10 weeks gestation or earlier. *See* Tex. Dep't of State Health Svcs., Vital Statistics Annual Reports: 2001-2008, available at http://www.dshs.state.tx.us/CHS/VSTAT/annrpts.shtm (last visited June 29, 2011).

8.     At very early gestational ages, it will likely not be possible to make the fetal heart auscultation audible to the pregnant woman. Using equipment likely to be available in an obstetrics practice, the heart auscultation is not easily audible until eight to ten weeks gestational age. Whether heart auscultation can be made audible depends on the equipment used and on factors specific to the patient, such as the position of the woman's uterus, the position of the fetus, and the size of the woman. Braid Decl. ¶¶ 32-33.

## III.    STANDARDS OF MEDICAL ETHICS GOVERNING INFORMED CONSENT

9.     In medical practice, the informed consent process takes place in the context of a confidential medical consultation between the healthcare provider and the patient. Grimes Decl. ¶ 16.

10.    In obtaining informed consent, healthcare providers have an obligation to comply with standards of medical ethics. *See* Grimes Decl. ¶¶ 11-12, 16-19; Lyerly Decl. ¶¶ 6-10.

11.    The purpose of the informed consent process is to ensure that the patient's consent consists of an informed and autonomous decision, and to make it possible to respect the individual patient's views about what she wants to do. Lyerly Decl. ¶ 10; Grimes Decl. ¶¶ 16-18.

12.    Central tenets of medical ethics provide that the physician may not act upon the patient without her consent; that the physician must respect the patient's autonomy; and that the

2

physician must act in the patient's best interests.  Lyerly Decl. ¶¶ 7-8, 16-17; Grimes Decl. ¶¶ 12, 14-15; *see also* Braid Decl. ¶ 23.

13. As a matter of medical ethics, the informed consent process is non-directive. Thus, the physician's role is to provide the patient with information that will allow her to make an autonomous choice.  This includes material factual information about the nature of the proposed procedure, the patient's indications for the procedure, the procedure's medical risks and benefits, and alternatives to the procedure.  Unless requested by the patient, it is inappropriate for a physician to interject into the informed consent discussion the physician's own value-based views or the value-based views of the government or any other third party. Lyerly Decl. ¶¶ 9, 11-13; Grimes Decl. ¶¶ 16-19; *see also id.* ¶ 15; Braid Decl. ¶¶ 21-22.

14. If a patient says that she does not want to receive particular information in the informed consent process, as a matter of medical ethics that decision must be respected by the physician.  Grimes Decl. ¶¶ 15, 18-19, 22; Lyerly Decl. ¶¶ 9, 12-14; *see also* Braid Decl. ¶¶ 21-23.

15. It violates the most basic standards of medical ethics to require physicians to subject an abortion patient to an experience of visual images and sounds of the fetus and explanations of these images and sounds when the patient has chosen not to receive the information and experience and does not believe it will inform her autonomous choice.  Grimes Decl. ¶¶ 15-16, 18-24; Lyerly Decl. ¶¶ 6, 9, 13-15; Braid Decl. ¶ 23.

16. The Act conveys to the woman the state-mandated message that she should prioritize the fetus (and the continued life of the fetus) above all other considerations.  Braid Decl. ¶ 21.

## IV.   STATUTORY FRAMEWORK

### A.   Woman's Right to Know Act Prior to Enactment of Texas House Bill No. 15

17.   In 2003, Texas enacted the Woman's Right to Know Act ("WRKA"), which mandates that certain procedures and content be used in the informed consent process when the patient is a woman seeking an abortion.  Tex. Health & Safety Code Ann. § 171.001 *et. seq.*

18.   The current version of WRKA mandates that, except in the case of a medical emergency, the performing *or referring* physician must inform the woman of: (1) the name of the physician who will perform the abortion; (2) the medical risks "associated with the particular abortion procedure;" (3) the probable gestational age of the fetus; and (4) the medical risks of carrying a pregnancy to term.  Tex. Health & Safety Code Ann. § 171.012(a)(1).  The performing physician or the physician's agent must also inform the woman that: (1) specified types of medical assistance benefits may be available to her; (2) the father is liable for child support; (3) public and private agencies provide pregnancy prevention counseling and referrals for obtaining birth control; and (4) she has the right to view printed state materials, which are also accessible on the Internet, describing the fetus and listing agencies that offer abortion alternatives.  *Id.* § 171.012(a)(2).  This information must be given to the woman by telephone or in person at least 24 hours before the abortion.  *Id.* § 171.012(b).

19.   Intentional performance of an abortion in violation of the WRKA constitutes a misdemeanor punishable by a fine of up to $10,000.  Tex. Health & Safety Code Ann. § 171.018.

### B.   The Imposition of Strict Liability by the Act

20.   The Act –which goes into effect on September 1, 2011, and applies to all abortions performed on or after October 1, 2011 – dramatically alters the penalty structure for violations of the WRKA.  The Act adds a new penalty provision that imposes strict liability for violation of any provision of WRKA, regardless of fault or mental state.  Act at sec. 10

(amending Tex. Occ. Code Ann. § 164.055(a)).  This new penalty provision requires the Texas Medical Board to take "appropriate disciplinary action" against *and* refuse to renew the license of any physician who violates the WRKA.  *Id*.  A physician need not be convicted of a violation of the WRKA or have intended to violate it to have his or her license renewal denied.  *See* Act, generally; *see also* Tex. Health & Safety Code Ann. §§ 171.001 *et seq*.

        C.        **The Act's Ultrasound and Heart Auscultation Requirements**

21.       The Act requires that ─ in order to obtain informed consent for an abortion ─ the physician who will perform the abortion (either personally or through an agent who is a certified sonographer) must perform an ultrasound (referred to as "sonogram" in the Act) at least 24 hours before the beginning of the abortion (the "pre-abortion ultrasound"), and the physician (in some cases, personally, and in other cases, personally or through an agent who is a certified sonographer) must undertake certain steps with respect to the pre-abortion ultrasound.  Act at sec. 2 (to be codified at Tex. Health & Safety Code Ann. § 171.012(a)(4)).

22.       For women who live at least 100 miles from "the nearest abortion provider that is a [licensed abortion facility] or a facility that performs more than 50 abortions in any 12 month period," the Act replaces the requisite 24-hour waiting period with a two-hour period.  Act sec. 2 (to be codified at Tex. Health & Safety Code Ann. § 171.012(a)(4)).

23.       Under the Act, the physician who will perform the abortion must "display[] the sonogram images in a quality consistent with medical practice in a manner that the pregnant woman may view them." Act at sec. 2 (to be codified at Tex. Health & Safety Code Ann. § 171.012(a)(4)(B)).

24.       The physician who will perform the abortion must also describe the fetal image in detail to the woman:  the physician must provide, "in a manner understandable to a layperson, a verbal explanation of the results of the sonogram images, including a medical description of the

5

dimensions of the embryo or fetus, the presence of cardiac activity, and the presence of external members and internal organs." Act at sec. 2 (to be codified at Tex. Health & Safety Code Ann. § 171.012(a)(4)(C)).

25. The physician who will perform the abortion or certified sonographer must also "make[] audible the heart auscultation for the pregnant woman to hear, if present, in a quality consistent with current medical practice" and must verbally explain the fetal auscultation to her. Act at sec. 2 (to be codified at Tex. Health & Safety Code Ann. § 171.012(a)(4)(D)).

26. Although the Act (sec. 3) and a certification form that must be completed by the woman (sec. 2) indicate that the patient has the option not to view the ultrasound images, the Act also states that the ultrasound images are "required to be provided to" the woman and that "consent to an abortion is voluntary and informed only if," *inter alia*, the image is placed in the woman's view. Act at sec. 3 (to be codified at Tex. Health & Safety Code Ann. § 171.0122(b)); *id*. at sec. 2 (to be codified at Tex. Health & Safety Code Ann. § 171.012(a)).

27. Similarly, while the Act (sec. 3) and the certification form (sec. 2) indicate that a woman coming within one of three designated categories may choose not to listen to the physician's verbal description of the fetus, the Act also states that "consent to an abortion is voluntary and informed only if," *inter alia*, the verbal description is provided. Act at sec. 2 (to be codified at Tex. Health & Safety Code Ann. § 171.012(a)).

28. Likewise, while the Act (sec. 3) and certification form (sec. 2) indicate that the woman has the option not to hear the heart auscultation, it is "required to be provided to" the woman under the Act, and the Act also states that "consent to an abortion is voluntary and informed only if," *inter alia*, the physician "makes audible" the heart auscultation for the woman

to hear, "if present." Act at sec. 3 (to be codified at Tex. Health & Safety Code Ann. § 171.0122(c)); *id*. at sec. 2 (to be codified at *id*. § 171.012(a)).

29. Moreover, the Act gives no indication that any woman has the option not to hear the mandated explanation of the heart auscultation. *See* Act at sec. 2 (to be codified at Tex. Health & Safety Code Ann. § 171.012(a)(4)(D); *id*. at sec. 3 (to be codified at Tex. Health & Safety Code Ann. § 171.0122(c).

30. Accordingly, in order to obtain informed consent, the Act appears to require the physician to place the ultrasound images in the woman's view, describe the fetal images to the woman, make the heart auscultation audible, if present, and explain the heart auscultation regardless of the woman's choices. The Act will thus compel physicians to subject some of their patients in a private medical setting to an experience and information that the patient considers unwanted, immaterial and/or irrelevant. *See* Braid Decl. ¶¶ 19-23; *see also* Grimes Decl. ¶¶ 18, 20; Lyerly Decl. ¶¶ 6, 9-10, 15, 17.

31. The speech (verbal descriptions and explanations of the fetus) and symbolic speech (displaying images of the fetus and making audible the fetal heart auscultation) which the Act compels physicians to provide to patients are inconsistent with the principles of informed consent and medical ethics. Lyerly Decl. ¶¶ 6, 14-17; Grimes Decl. ¶¶ 11, 13, 18-22.

   D.   **Lack of Notice Provided by the Act**

32. The Act imposes a number of vague requirements and prohibitions that fail to give Plaintiffs and all Medical Providers of Abortions in Texas notice of how to conform their conduct to the law. Braid Decl. ¶¶ 29-38.

33. The Act does not make clear what effect, if any, a woman's choice not to view the ultrasound images, hear the fetal heart auscultation, and/or receive the mandatory explanations of the images and auscultation have on the physician's obligations (either personally, or, in some

cases, through a certified sonographer agent) to place the ultrasound images in the woman's view, make the heart auscultation audible, and/or provide a verbal explanation of the ultrasound images and/or heart auscultation. *See* Act, sec. 2 & 3; Braid Decl. ¶¶ 19, 34; *see also* Compl. ¶¶ 31-36, 94-95.

34.     The Act requires the display of ultrasound images "in a quality consistent with medical practice," Act at sec. 2 (Tex. Health & Safety Code Ann. § 171.012(a)(4)(B)), but gives no indication of the scope of medical practice to which it refers (*e.g.*, among outpatient abortion providers, among obstetrician-gynecologists generally, among maternal-fetal medicine specialists). *See id.*; Braid Decl. ¶ 31; *see also* Compl. ¶ 96.

35.     The Act requires that the heart auscultation be made audible, if present, "in a quality consistent with current medical practice," Act at sec. 2 (Tex. Health & Safety Code Ann. § 171.012(a)(4)(D)), but gives no indication what methods or equipment (*e.g.*, stethoscope, hand-held doppler, ultrasound machine) must be used to this end, or how much time and effort the physician must expend trying to make the heart auscultation audible at gestational ages when that is difficult or impossible. Accepted medical practice does not involve making the fetal heart auscultation audible to women seeking abortions. *See id.*; Braid Decl. ¶¶ 32-33; *see also* Compl. ¶¶ 97-98.

36.     The Act requires a physician to provide a verbal explanation of the ultrasound images "in a manner understandable to a layperson," Act at sec. 2 (Tex. Health & Safety Code Ann. § 171.012(a)(4)(C)), without giving physicians any guidance on how this standard can be met. *See id.*; Braid Decl. ¶ 35; *see also* Compl. ¶ 99.

37.     The Act does not indicate how a woman can or will know whether she lives at least 100 miles from "the nearest abortion provider that is a [licensed abortion facility] or a

8

facility that performs more than 50 abortions in any 12 month period," and is thus entitled to a two-hour, rather than 24-hour, waiting period. The Act gives no indication of what obligations, if any, the abortion provider has to verify the accuracy of a woman's claim in this regard, or to provide her with information about the location of other abortion providers. *See* Braid Decl. ¶ 30; *see also* Compl. ¶¶ 101-102.

38. The Act gives no indication of what steps, if any, an abortion provider must undertake to verify a woman's assertions that she is pregnant as a result of "a sexual assault, incest or other violation of the Texas Penal Code" and that the violation has been reported to law enforcement authorities or has not been reported because the woman "reasonably believe[s] that doing so would put [her] at risk of retaliation resulting in serious bodily injury." *See* Act at sec. 3 (Tex. Health & Safety Code Ann. § 171.0122(d)(1)); *see also* Braid Decl. ¶ 36; Compl. ¶ 103.

39. The Act does not indicate what steps, if any, a physician providing an abortion must undertake to verify the accuracy of a woman's assertion that "her fetus has an irreversible medical condition or abnormality, as identified by reliable diagnostic procedures and documented in [her] medical file." Act at sec. 3 (Tex. Health & Safety Code Ann. § 171.0122(d)(3)); Braid Decl. ¶ 36; *see also* Compl. ¶ 104.

40. The Act fails to give abortion providers notice of how they can comply with the Act's restrictions on payment and financial arrangements made "[d]uring a visit made to a facility to fulfill the requirements" of Texas Health and Safety Code section 171.012(a) as amended. *See* Act, sec. 2 (Tex. Health & Safety Code Ann. § 171.012(a-1)); Braid Decl. ¶ 38; *see also* Compl. ¶ 105.

41. The Act's mandate for provision of a government publication "that provides information about paternity establishment and child support" to a woman who has chosen not to

have an abortion after receiving the requisite sonogram and WRKA information, Act sec. 3 (Tex. Health & Safety Code Ann. § 171.0123), imposes an obligation with no apparent end date and no limitation as to the provider's knowledge, or lack of knowledge, of the woman's ultimate decision.  *See id.*; Braid Decl. ¶ 37; *see also* Compl. ¶ 106.

**V.    IRREPARABLE HARMS**

42.    By forcing physicians to take actions contrary to their ethical duties to act in their patients' best interests, with respect for their patients' autonomy, and with their patients' consent, the Act will harm those patients and also the integrity of the medical profession and of the Texas Medical Providers.  Grimes Decl. ¶¶ 11, 21, 24; Braid Decl. ¶ 23; Lyerly Decl. ¶¶ 15-17; *see also* Braid Decl. ¶¶ 20-22.

43.    The Act will inflict significant harm on the physician-patient relationship.  For example, in situations where the Act requires a physician to subject a patient to an experience or information that the patient does not want, it puts the patient in a position of protecting or defending herself against something her physician is doing to her.  Lyerly Decl. ¶ 15; Braid Decl. ¶ 23; *see also* Lyerly Decl. ¶¶ 6, 16-17.

44.    The Act also threatens significant harm to the health and well-being of women seeking abortions.  For example, where the Act requires a physician to subject a patient to an experience or information that the patient has declined to accept, it will unnecessarily stress, upset, and/or anger her as she prepares to undergo, and then recover from, that medical procedure.  *See* Lyerly Decl. ¶ 17; Braid Decl. ¶¶ 21-23.

45.    The Act's assertion that it will protect the health and well-being of women seeking abortions, Act, sec. 12, lacks medical or scientific support.  Grimes Decl. ¶ 25; Braid Decl. ¶ 23.

46. The Act will chill physicians in their provision of constitutionally-protected abortion procedures by imposing vague standards under a strict liability regime punishable by mandatory non-renewal of the physician's medical license and other mandatory disciplinary actions. Braid Decl. ¶¶ 17-19, 29; *see also* Compl. ¶ 110.

47. The Act will significantly, and unjustifiably, reduce women's access to lawful abortion services. Braid Decl. ¶¶ 25-28; *see also* Grimes Decl. ¶¶ 26-29.

48. The Act will impose irreparable harms on patients who seek, and medical providers who perform, abortions by depriving them of their constitutional rights to free speech, privacy, equal protection, and due process. *See* Compl. ¶ 112.

Dated:  June 30, 2011

Respectfully submitted,

 /S/ Dicky Grigg_____
Dicky Grigg, TX Bar #08487500
Spivey & Grigg, LLP
48 East Avenue
Austin, TX 78701
(512) 474-6061
(512) 474-8035 Fax
dicky@grigg-law.com

Bebe J. Anderson*
Bonnie Scott Jones*
Center for Reproductive Rights
120 Wall Street, 14th Floor
New York, NY 10005
(917) 637-3600
(917) 637-3666 Fax
banderson@reprorights.org
bjones@reprorights.org

Susan Hays, TX Bar #24002249
Godwin Ronquillo, PC
1201 Elm Street, Suite 1700
Dallas, TX 75270
(214) 557-4819
(214) 432-8273 Fax
shays@godwinronquillo.com

Jamie A. Levitt*
J. Alexander Lawrence*
Morrison & Foerster, LLP
1290 Avenue of the Americas
New York, NY 10104
(212) 336-8638
(212) 468-7900 Fax
alawrence@mofo.com

*Admitted *Pro Hac Vice*